UNITED STATES of America, Plaintiff,

v.

40.00 ACRES OF LAND, MORE OR LESS, situate IN HENRY COUNTY, State of MISSOURI, and Kenneth E. White, et al., Defendants.

No. 20413–1.

United States District Court,
W. D. Missouri, W. D.

July 22, 1976.

**436**

Bert C. Hurn, U. S. Atty., David M. Proctor, Jr., Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Alex Bartlett, Jefferson City, Mo., Barkley M. Brock, Clinton, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

The final determination of this cause has been delayed by the pendency of the related litigation involved in *Whitman v. Highway Commission*, (W.D.Mo.1975) 400 F.Supp. 1050, and by difficulties occasioned by the government's delay in stipulating the virtually undisputed factual circumstances. The Whitmans, however, filed Rule 36, F.R. Civ.P., requests for admissions. The government failed to respond. Technically, and under Rule 36(a), the failure to respond may be taken as a complete admission. Compensation in the amount of $3,000 and attorney's fees in the amount of $1,500 could therefore be considered to be admit-

ted. However, in order to avoid possible complicating procedural claims, we shall make findings of fact and state conclusions of law and direct counsel to prepare, serve, and file a form of final judgment and permit the government to respond in a manner which will avoid any claim that the government may have been denied a right to be heard.

This cause involves the acquisition of 40 acres of land located on the south edge of Clinton, Henry County, Missouri, by the United States of America for the Harry S. Truman Dam and Reservoir. By order of November 13, 1973, the Court in this cause has heretofore affirmed the report of Commission Appointed Pursuant to Rule 71A awarding compensation to Kenneth E. White and Eula White, the fee owners of the property, in the amount of $48,000. The remaining questions for adjudication involve the compensation rights of Glenn L. Whitman and Janet E. Whitman, d/b/a Osage Outdoor Advertising, with respect to an outdoor advertising sign located upon the subject property.

On June 29, 1972, the United States filed its condemnation complaint in conventional form herein to acquire the subject property. At that time $25,000 was paid into the registry of the Court as the amount of "estimated compensation" by the condemning agency. Joined as parties defendant in this cause were Kenneth E. White and Eula White, Glenn L. Whitman, doing business as Osage Outdoor Advertising Company, the Henry County Collector of Revenue, and the Henry County Treasurer. No claims have been made or asserted with respect to any state property tax liens upon the property; all parties have treated the county collector and county treasurer as parties without any interest in the property; and the Court has heretofore determined that they have no interest in the property.

Under the standard procedures of this Court the cause was referred to a Rule 71A(h) Commission for trial. Appearances in the cause were made by counsel for the Whites and by counsel for Glenn L. Whitman and Janet E. Whitman; a stipulation

was entered into between Kenneth E. White and Eula White and Glenn L. Whitman and Janet E. Whitman, d/b/a Osage Outdoor Advertising Company providing for the withdrawal of the $25,000 in the registry of the Court, with $24,000 to go to the Whites, and $1,000 to go to the Whitmans, said stipulation being "made without prejudice to the rights of the parties in and to the property, and such shall not be considered as either a pro rata determination of the interests of the parties or as the value of their interests." Said stipulation further provided that the "parties hereto reserve their rights with respect to a trial of the issues of just compensation, and the nature and extent of the interests which are compensable herein." Said stipulation was filed with the Court; and upon oral motion made by the Assistant United States Attorney for distribution to the Whites and the Whitmans in accordance with the stipulation, the motion for distribution by the United States was sustained and the distribution was formally ordered on November 3, 1972, in accordance with the stipulation.

The cause was thereafter called for trial before the three-member Commission on July 16, 1973. At that time the United States appeared through the Assistant United States Attorney, and the Whites and the Whitmans appeared through their respective counsel. Pursuant to a colloquy between counsel at the commencement of the trial on July 16, 1973, set forth in more detail, *infra*, the claims of the Whitmans to compensation and the questions relating to their entitlement to compensation with respect to the outdoor advertising structure on the subject property were severed from the trial of the issues of compensation for the Whites, as fee owners of the property. Following the trial at which witnesses of the United States and the Whites were heard, the Commission filed its detailed written Report herein where it was determined that the Whites were entitled to $48,000 as just compensation for the taking of their land. Objections to the Report were filed by the United States, were duly considered by this Court, and on November 13, 1973, this Court entered its order overruling the objections of the United States and confirmed the Report of the Commission.

On November 11, 1973, the Whitmans filed their "Motion and Counter-Complaint" in this Court, asserting their entitlement to compensation by reason of their outdoor advertising structures on the subject property.

After securing extensions of time within which to respond to the "Motion and Counter-Complaint," the United States on January 14, 1974, filed its "Motion for Evidentiary Hearing" requesting an evidentiary hearing "on the issue of liability of plaintiff to the defendants Glenn L. Whitman and Janet E. Whitman, raised by their motion and counter-complaint filed herein . . . ." No jurisdictional questions were raised at that time. On January 21, 1974, this Court entered a "Memorandum and Order" noting prior orders of the Court granting the United States extensions of time within which to respond to the "Motion and Counter-Complaint," noting that instead of filing such a response the United States had requested an evidentiary hearing, and noted that Mr. Whitman, d/b/a Osage Outdoor Advertising, had been joined in the plaintiff's condemnation complaint. Said order directed the United States to file its response to the Whitman motion and counterclaim on or before January 31, 1974, and further directed that unless that time is extended for good cause shown on written application, "the failure of the government to file a response in which it shall state its legal position in regard to the Missouri Billboard Law shall be deemed a waiver of any opposition to the right of the Whitmans to compensation for the sign." The January 21, 1974 order further granted the government's request for an evidentiary hearing, and "in order that the government be assured a full opportunity to dispute the question as to when the sign was erected, counsel are advised that the Court will consider the pending motion as a motion for partial summary judgment and make appropriate

findings pursuant to Rule 56(d), Federal Rules of Civil Procedure."

On January 31, 1974, the United States filed "Plaintiff's Suggestions in Opposition to Motion and Counter-Complaint of Osage Outdoor Advertising." Said Suggestions set forth various legal arguments, but did not respond paragraph by paragraph or in admission or denial form, as to the allegations of the Whitman motion and counter-complaint. The United States did, however, deny the entitlement of the Whitmans to damages.

A review of the proceedings at the July 16, 1973 hearing before the Commission is necessary for an understanding of the present posture of the cause. Prior to that hearing, there is nothing of record in this cause to indicate that the government took the position that the Whitmans were not entitled to compensation. The Whitmans had entered into the stipulation with respect to the withdrawal of moneys, such had been presented to this Court by counsel for the government, and having received $1,000 pursuant to said stipulation, it was apparent to anyone who would examine the record that the Whitmans had a "live" interest in the issues of compensability for their sign. The Court notes parts of the colloquy of counsel before Commissioners Duggins, Crain and Milligon on July 16, 1973:

CHAIRMAN DUGGINS: Proceed, Mr. Proctor.

MR. PROCTOR [Assistant United States Attorney]:

Mr. Bartlett is here representing Mr. and Mrs. Whitman who operate as the, what is it?

MR. BARTLETT: Osage Outdoor Advertising Company.

MR. PROCTOR: The Osage Outdoor Advertising Company. There is a sign, as was evidenced on inspection this morning, which these defendants constructed and maintained as a signboard, public advertising, advertising the England Motel, which is a motel here in Clinton, Missouri.

\*　　\*　　\*　　\*　　\*　　\*

Now, in 1972, before the date of taking in this case, this Act became effective March 30, 1972, the legislators of Missouri passed a statute which provides and I quote: "On or after March 30, 1972, no outdoor advertising shall be erected or maintained within 660 feet of the nearest edge of the right-of-way and visible from the main travel-way of any highway which is a part of the Interstate or primary system in this State except the following." Now, Mr. Bartlett may wish to point out some exceptions, but I am not going to read the rest of the statute unless the Commission would like me to. What the government relies on is the very clear words of the statute that: "No outdoor advertising should be erected or maintained within 660 feet of the nearest edge of the right-of-way and visible from the main travelway of any highway which is a part of the Interstate or primary system in this State."

Highway 13, I think Mr. Bartlett would agree, is a primary State road. He would also agree, I think, that the sign was located within 660 feet of the right-of-way of Highway 13 and visible from Highway 13.

Now, this presents, may it please the Commission, a question of law which the Court itself should determine, but I should state the government's position at this time.

CHAIRMAN DUGGINS: What is the government's position?

MR. PROCTOR: That it is not a compensable damage.

JUDGE CRAIN: Why did you condemn that?

MR. PROCTOR: Because it is unlawfully situated. I might say that we are sure the government would be willing for these defendants to remove their sign without—

CHAIRMAN DUGGINS: When was the sign erected?

MR. BARTLETT: It was erected prior to enactment of the 1972 law Mr. Proctor referred to, and it would be our position that the prior non-conforming right granted that it could not have been erected after March 30, 1972, and instead of making that

unlawful, it is our position that the acquisition of the prior non-conforming right and, in fact, it makes it more valuable than if it could have been relocated in a similar area.

Now, as far as relocation, it is our position that moving it off, moving the sign physically off the land would destroy the principal value of the sign and that the salvage value is very little. So we would not concede that that would be a proper way of handling it. Our position is that it is a legal non-conforming sign.

\* \* \* \* \* \*

MR. BARTLETT: For a ten year period. Now, I have a copy of the lease marked here (indicating), and the original lease, I'm having it brought here from Osage Beach. It will be here later this afternoon.

I might add, if reliance is placed upon the Highway Billboard Law of Missouri, Chapter 226.500 or 226.580, I would direct the Commission's attention to Section 226.570 which provides that outdoor advertising may only be removed pursuant to that Section or Section 226.580. Now, this is important because 580 specifies the poorly kept unlawful signs that are removed without compensation; 570 is a method whereby the Highway Commission would remove prior non-conforming signs by payment of compensation. So, if we're going to apply the Missouri Billboard Law here, as suggested by the government, I would suggest that it apply in toto and that the required compensation provision also apply.

Quite clearly, we feel that this is a structure within the meaning of the Land Acquisition Policy Act and that we are entitled to a separate assessment for the value of the structure because of those provisions and in that fashion we would hope to avoid the hiatus Mr. Brock just referred to.

JUDGE CRAIN: Was the lease recorded?

MR. BARTLETT: The lease was not recorded.

MR. PROCTOR: May it please the Commission, Mr. Bartlett similarly stated what he believed his client's position was in this matter, but it is obvious that our contentions, respective contentions, pose a question of law or certainly makes a question of law in fact, which I believe is beyond this Commission's jurisdiction to determine and would be the government's suggestion that the Commission proceed to hear the issue of compensation, so far as Mr. White is concerned and let the matter be reserved for the decision of the District Court, the matter for which Mr. Bartlett contends. I don't think we can resolve that issue nor do I think the Commission has that jurisdiction.

\* \* \* \* \* \*

JUDGE CRAIN: Well, if the sign company is entitled to compensation how are they going to get it?

MR. PROCTOR: By a [sic] evidentiary hearing before Judge Oliver.

\* \* \* \* \* \*

MR. BARTLETT: I think it can be separated out and we can either—I believe we're entitled to either the amount the structure enhances the land or the fair market value of the structure, whichever is greater, and in order to avoid the problem of allocation, we would be willing to waive the right to the enhancement feature and simply have adjudicated the question of the fair market value of the structure itself, assuming we are correct on our application of Title 3. This is done to simplify the use here as far as our position is concerned.

\* \* \* \* \* \*

CHAIRMAN DUGGINS: Mr. Bartlett, on behalf of your client, and Mr. Proctor, on behalf of the government, are you willing to stipulate and agree that the total issue to be decided by this Commission, today, in this case, shall be the amount of fair, just compensation to Mr. White for the land taken in this proceedings?

MR. PROCTOR: That's right.

MR. BARTLETT: Not enhanced by the sign.

MR. PROCTOR: No enhancement.

\* \* \* \* \* \*

CHAIRMAN DUGGINS: I say, will the government not raise any objection to Mr.

Bartlett raising the question of compensation entitled to his client by virtue of the fact that they are not presenting any evidence in this hearing?

MR. PROCTOR: I think we can agree to that, yes, sir.

MR. BARTLETT: I'm wondering, Mr. Proctor, to expedite matters, could we agree that our discussions back and forth here, as to the various contentions, might be certified as a basis for the Judge's ruling or would you desire evidence? Our plans are fairly clear cut here to express our position and perhaps this might be referred to the Judge as a request for a ruling, jointly, by the two of us.

MR. PROCTOR: Yes, either that or a motion on that authority, or a joint motion as far as that's concerned.

CHAIRMAN DUGGINS: How are you going to make your contention to Judge Oliver?

MR. PROCTOR: By motion. It has to be by motion.

It appearing to the Court that it was desirable to limit the issues between the Government and the Whitmans and to ascertain areas of agreement as to issues and noncontroverted facts, the Court called a conference on June 12, 1974 of counsel for those parties. At that conference it was agreed that the controverted factual issues were few, if any, and counsel agreed to prepare and submit to the Court a stipulation of facts and issues for determination. Counsel for the Whitmans a short time later prepared a draft stipulation which was submitted to counsel for the government for approval. After the passage of several months, not having had a response with respect to the request to the government that the stipulation be agreed to, changed, or supplemented by the government, the Whitmans on November 1, 1974, submitted a Request for Admissions to plaintiff pursuant to Rule 36 that the "stipulation" and

the matters and exhibits referred to therein be admitted, and that the "matters set forth therein be considered as submitted to the Court as fully and effectively as if specifically agreed to by the United States of America." No objections to said Request for Admissions or the requested effect thereof have been made by the government. The Court, therefore, deems the matters set forth in the stipulation as admitted, and the entire record required for a determination of all remaining issues in this cause as being established.

■ Many of the issues presented in this case have heretofore been determined in an exhaustive and well-reasoned opinion of Judge Elmo B. Hunter in *Whitman v. State Highway Commission of Missouri, supra.*[1] In that case the Whitmans, d/b/a Osage Outdoor Advertising, asserted, as they have here, that their outdoor advertising signs upon property required for a federally-assisted project, and irrespective of any "leasehold interest" under traditional eminent domain law, constituted "structures" within the meaning of Section 302 (42 U.S.C. § 4652) of the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970 (URA), and that they were entitled to compensation for the signs by reason of Section 302. Judge Hunter upheld that contention, and this Court agrees with Judge Hunter's holding that outdoor advertising signs constitute "structures" within the meaning of Section 302, that the sign owner is entitled to the compensation specified in that Section, and that Section 302 is judicially enforceable. We adopt Judge Hunter's analysis of Section 302.

■ We therefore find and conclude that the owner of a sign structure located upon property of another pursuant to some sort of landlord-tenant relationship but regardless of any specific type of tenancy or leasehold interest, must be compensated in the manner specified in Section 302 of the URA

1. It is noted that in that action the Secretary of Transportation and the Federal Highway Administrator were defendants (along with the State Highway Commission of Missouri), and were represented by the United States Attorney for the Western District of Missouri. The United States Attorney filed a Notice of Appeal from that decision, but later voluntarily dismissed the appeal and the judgment has now become final.

if the property is acquired for a federal (or federally-assisted) project.

 It is also clear that the acquiring agency under the provisions of Section 302 of the URA is under a duty to afford to the sign owner in such situation, separate and apart from any offer, negotiations, settlement, or acquisition with or from the fee owners, the compensation provided in Section 302 of the Act, and that such duty is judicially enforceable. *Whitman v. State Highway Commission of Missouri, supra.*[2] The command of the statute leaves no room for doubt—that the acquiring agency is under a duty to see that the "fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure, or improvement for removal from the real property, *whichever is the greater, shall be paid to the tenant therefor.*" (Emphasis supplied). Negotiations for acquisition of a tenant-owned structure must be with the tenant, and negotiations with a fee owner alone and making an offer to that fee owner which includes compensation for the tenant does not satisfy the requirements of the URA. See Hearings of the Public Works Committee of the House of Representatives with Respect to S. 1, 91st Congress, pp. 145, 283. By reason of Section 302 of the Uniform Act, it is clear that the so-called "unity rule" in traditional eminent domain law is no longer effective to limit the compensation with respect to tenant-owned structures. See "Uniform Appraisal Standards for Federal Land Acquisitions" (Interagency Land Acquisition Conference, 1973), pp. 26–27. It is readily apparent that where, as here, the highest and best use of the subject property as a

whole is a use which is other than for outdoor advertising, a sign structure would have little effect upon the value of the property as a whole for such other use. But it is equally clear that the outdoor advertising structure is obviously of substantial value as an income-producing property owned by the Whitmans.

 The right to use property "without reference to the actual use" is a compensable right which cannot be appropriated without compensation. *United States v. General Motors Corp.,* 323 U.S. 373, 380, 65 S.Ct. 357, 360, 89 L.Ed. 311 (1944). The tenant-owner of fixtures upon property has a constitutionally-protected right to compensation for the value of that property which, but for the acquisition or appropriation, of the fee interest, would have reasonably continued through its useful life. *Almota Farmers Elevator and Warehouse Co. v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973).

 Read against the constitutional requirements of just compensation and considering the legislative history of Section 302, the Court, therefore, concludes that Section 302 was intended to provide a procedure whereby the inequities produced by a strict application of the "unity rule" in traditional eminent domain law would be removed and to assure that the duty would be placed upon acquiring agencies to acquire all tenant-owned structures on property being acquired directly from the tenant, without relegating the tenant to uncertain litigation with the fee owner as to the tenant's share of an illusory "whole." It is further clear, as noted by Judge Hunter in *Whitman, supra,* that it was the intent of Congress to provide a uniform national

---

**2.** While it is apparent that the actions of the Corps of Engineers as to the Whitmans do not pass muster of the "fair dealing" requirements of Section 301 of the URA, it is not here necessary to reach the issue as to whether Section 301 is judicially enforceable. See, however, *Bethune v. H. U. D.,* 376 F.Supp. 1074 (W.D. Mo.1972) (Becker, C. J.) and *State ex rel. Weatherby Advertising Co. v. Conley,* 527 S.W.2d 334 (Mo. en banc 1975), holding Section 301 to be judicially enforceable. But cf.

*Barnhart v. Brinegar,* 362 F.Supp. 464 (W.D. Mo.1973) (Collinson, J.), holding that a United States District Court is without jurisdiction under 28 U.S.C. § 1331(a) to judicially enforce Section 301 claims on a federally-aided state project. It is clear, however, that most parts of the URA are judicially enforceable. *Barnhart v. Brinegar, supra*; and see also, *Tullock v. State Highway Commission of Missouri,* 507 F.2d 712 (8th Cir. 1974) (per Mr. Justice Clark).

standard of compensation unburdened by the intricacies and nuances of the various state laws relating to fixtures. We further conclude that the compensation to which persons in the position of the Whitmans are entitled is the value of the sign structure *prior* to removal. We read the words "for removal" as meaning prior to removal and without respect to the acquisition of the fee by the governmental authority. To limit compensation to the "salvage value" of the structure when it has been removed from the subject property would render useless the provisions of Section 302, for where, as here, the record indicates that the "salvage value" of the structure when removed from the subject property would be nominal or nonexistent, neither the constitutional mandate of *Almota Farmers Elevator and Warehouse Co. v. United States, supra,* nor the overriding intent of the URA to afford full and fair compensation would be met.

■ We therefore find and conclude that the Whitmans are entitled to the amount by which the sign structure enhances the value of the subject property (which determination has here been waived by the Whitmans) or, if greater, the value of the structure, in place and without reference to the government's acquisition of the fee, such value to include such compensation as will justly compensate the owner of the structure for his loss because he has been deprived of the ownership rights for whatever might be determined to be the useful life of the structure, taking into consideration any longer life as a result of normal maintenance.

■ The Court has considered the government's contention that the sign is "unlawful" under the Missouri Highway Beautification Law and that, therefore, the Whitmans are not entitled to compensation. That claim is without merit for the reasons stated in the Whitmans' briefs. Whether the government has preserved any contention of "illegality" of the sign and a consequent denial of compensation predicated upon the 1966 Missouri Highway Beautification Law, commonly known as Senate Bill 8, and codified as Sections 226.500 through

226.600, R.S.Mo.1969, is questionable. That question need not be here reached, and the Court declines to do so, adopting instead the rationale of Judge Hunter in *Whitman v. State Highway Commission, supra,* pp. 1071–1077. Furthermore, an attack here upon the "illegality" of the signs would constitute a collateral attack, and any such attack (even if well founded) can only be made, if at all, by the State Highway Commission of Missouri under the provisions of Section 226.500, R.S.Mo.1972. Such procedure is exclusive. *Kansas City Gunning Advertising Co. v. Kansas City,* 240 Mo. 679, 144 S.W. 1099, 1103 (1912).

■ It is clear from what has been stated that the Whitmans are entitled to compensation in an apparent amount of $3,000, less the $1,000, heretofore received. It is further clear that, in order to avoid the expenditure of further judicial time and expense to the parties, the Whitmans' motion and counterclaim may and should be considered as an original action brought under the Tucker Act, and that, being so considered, should be considered as consolidated with the original action. In light of the government's denial that the Whitmans were entitled to any compensation, we find and conclude that the Whitmans are entitled to attorney's fees under Section 304 of the URA and its implementing regulations. It is our understanding that the parties are in agreement that if attorney's fees should be awarded, they are agreed that $1,500 is a reasonable amount. The orders to be entered will resolve any doubt which may exist in regard to that question.

For the reasons stated, it is

ORDERED (1) that counsel for the Whitmans prepare, serve, and submit to the government for approval as to form an appropriate final judgment which shall confirm and approve the report of the Commission filed October 15, 1973. Such final judgment shall award $48,000 to Kenneth E. White and Eula White, in accordance with the Commission's findings, conclusions and recommendations; shall award the sum of $3,000 to Glenn L. Whitman and Janet E. Whitman as just compensation in full for

their interests in outdoor advertising structure, as apparently agreed to by the government, and award the sum of $1,500 to the Whitmans as attorney's fees, as apparently agreed to as to amount. It is further

ORDERED (2) that if the government wishes to place in factual dispute the amounts of any of the awards above stated it shall do so by preparing, serving, and filing an appropriate objection to the form of judgment prepared by counsel for the Whitmans. The failure of the government to prepare, serve, and file such an objection within one (1) week after service of the form of judgment shall be considered as a waiver of any right to contest any of the amounts stated in the judgment and as an admission of the correctness of the amounts stated therein.