Bennie VITALE, Plaintiff,

v.

CITY OF KANSAS CITY, MISSOURI, and U.S. Department of Housing and Urban Development, Defendants.

No. 86–0597–CV–W–6.

United States District Court, W.D. Missouri, W.D.

Jan. 26, 1988.

Donald E. Raymond, Dennis Owens, Kansas City, Mo., for plaintiff.

Kenneth Weinfurt, Asst. U.S. Atty., Galen Beaufort, Asst. City Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Plaintiff Vitale seeks judicial review of a Federal administrative order refusing to give the necessary consent to payment (from contributed Federal funds) incidental to the state-court condemnation of premises on which his restaurant was located. He originally sued the City of Kansas City but was met by a challenge that the United States Department of Housing and Urban Development (HUD) was a necessary or indispensable party. *Vitale v. City of Kansas City*, 701 S.W.2d 213 (Mo.App. 1985).[1] After plaintiff joined HUD in his fourth amended petition, the case was removed to this court. This court rejected

1. The City is now contractually obligated to satisfy remaining valid claims, but may seek Block Grant Funds from the United States for further reimbursement. While there are some questions about this court's jurisdiction to resolve a claim that is properly directly presented against the City alone, such doubts will be resolved in favor of this proceeding.

various summary judgment defenses by HUD, including laches, even though HUD's files had been destroyed after the final decision in 1979. The parties have been able to reconstruct sufficient files for ruling this controversy, which arose in 1974–5.

Plaintiff contends that he was entitled to payment for the appraised value, exceeding $43,000, of restaurant equipment and furnishings that he claims under the "direct loss of tangible personal property" benefit, as provided by the Uniform Relocation Act, 42 U.S.C. § 4622(a). He asks the court to reject the adverse administrative decision as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 706.

Defendants moved, at the beginning of a half day bench trial, to confine proof to the administrative record. The court reserved ruling, and listened to testimony of plaintiff to the effect that all items in the inventory were easily removable (except for a barbecue pit). The court also heard, over objection, testimony by plaintiff's appraiser.

■ It is now ruled that plaintiff is not entitled to bolster the record made in 1979 and before, as a means of attacking the final administrative decision in 1979. Trial de novo is not authorized, except in unusual circumstances not appearing here. *Cooperative Services, Inc. v. U.S. Department of HUD*, 562 F.2d 1292, 1295 (D.C. Cir.1977). The court does not readjudicate an administrative case, but determines whether there was a rational basis for the agency action. *Starke v. Secretary, U.S. Department of HUD*, 454 F.Supp. 477, 483 (W.D.Okla.1977). The objection to testimony regarding information not disclosed be-

fore the HUD decision in 1979 is therefore sustained. The new testimony, in balance, does not in any event prove helpful to plaintiff's claim.[2]

The parties have stipulated to most of the pertinent facts and plaintiff has adopted by reference all 79 of the City's proposed findings of fact. See Doc. 43, filed December 29, 1987, for the text of such agreed facts, which will not be repeated. The property claim of $43,000, which remains the sum sought in the fourth amended complaint (though reduced to $35,000 in plaintiff's proposed findings and conclusions), was initially rejected on March 28, 1975, by letter of the area director of HUD, William R. Southerland, for the following reasons: (1) seven bulky items were considered realty rather than personalty and therefore deemed already paid for in the condemnation proceeding (in which plaintiff, though named, apparently made no claim), (2) plaintiff's cost information had not been supplied, (3) there were concerns about Taylor's qualifications to appraise the larger items, and (4) the moving cost estimate of $66,000 included costs associated with items which HUD considered to be realty.

■ A new appraisal was thereafter obtained by the City agency charged with assisting plaintiff. That appraisal (the Bolte appraisal) omitted the items HUD treated as improvements to the real estate. The fair market value of remaining property was listed by Bolte at $13,561.40 and the moving cost was estimated at $1,760. HUD thereafter took the position that the amount payable was $1,760, the moving cost, since plaintiff could have kept and reused the other movable items but had

---

2. Plaintiff testified that he paid some $30,000 to the former restaurant operator, Ted Accurso, in the early 1970s, to acquire the restaurant business. He had previously declined to give any information relating to his cost of the items in question. Without accepting the belated, unverified cost testimony, I believe it tends to show that the property claim of $43,000 is seriously inflated. Presumably much of the value of an ongoing business is good will. The appraiser, Jack Taylor, was not paid for the appraisal but expected plaintiff to give him some business when plaintiff relocated his restaurant. Taylor was experienced in buying and selling new and used restaurant equipment. He testified that he valued the items in accordance with the price for which his company would *sell* such items; no consideration was apparently given to what his company would *pay* for the items in question. A very large difference might exist between the purchase and sale prices of such used equipment. At best, plaintiff greatly overvalued his claims and prior to trial advanced a frivolous claim that a barbecue pit should be treated as personalty. This new information weakens the general credibility of plaintiff's case.

elected not to do so. By statute, allowable relocation costs are limited to the lesser of personal property losses and moving costs. 42 U.S.C. § 4622(a) (applicable to state agencies under 42 U.S.C. § 4630).

The statute further provides that improvements are deemed part of the real estate "notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real estate, to remove such ... improvement...." 42 U.S.C. § 4652(b)(1). Under the Federal statute, therefore, state law rulings on the removability of trade fixtures do not seem to be controlling. *United States v. 40.0 Acres of Land*, 427 F.Supp. 434, 442 (W.D. Mo.1976). There is also a statutory prohibition against duplication of payments. 42 U.S.C. § 4652(b)(2). This section also requires before payment that there be a disclaimer of interest in the improvements by the owner of the land. *State ex rel. State Highway Commission v. Volk*, 611 S.W.2d 255, 257 (Mo.App.1980). The inventory form used by plaintiff contains a notice that a tenant should submit a letter from the owner releasing property claimed for removal. Plaintiff submitted no such letter.[3]

■ It is concluded that HUD's rejection of the claim was reasonable and almost inevitable. Major items had been classified as improvements by the appraisers and could not be claimed as personal property. The statute apparently precludes giving controlling effect to removability, which is essentially the test advocated by plaintiff. Even if all property claimed should be treated as personalty, the major items had not been released for removal by the plaintiff's landlord or the owner. Plaintiff's ownership was not established. Even if he paid Accurso for the restaurant business, there is no showing that Accurso had been the owner of the items. So far as appears, they were simply part of the leased premises. Eliminating the major, bulky items, as Southerland reasonably did, there is no showing that the moving costs would not

be less than the value of the remaining items. While plaintiff questions Bolte's moving cost estimate he did not present anything exceeding that sum, once the large items are removed.

■ In the alternative, I do not believe plaintiff is correct as to the common law of trade fixtures, which is central to his claim. The law of trade fixtures is somewhat more complex and also somewhat more result-oriented and commonsensical than the parties suggest. In the condemnation context, there seems to be a tendency to treat equipment, even though theoretically removable, as an improvement to the premises for which compensation should be paid by the condemnor in the initial condemnation proceeding. *State ex rel. State Highway Commission v. Dockery*, 300 S.W.2d 444 (Mo.Sup.1957); *United States v. Certain Property*, 344 F.2d 142 (2d Cir.1965). As between the owner and a tenant, the *intention* to affix permanently may be controlling; as between the owner and the tenant's creditors, easy *removability* is more important. *Matz v. Miami Club Restaurant*, 127 S.W.2d 738 (Mo.App.1939). A vendee of the owner tends to have stronger rights to keep trade fixtures in place than the owner might have. 35 Am.Jur.2d 701, Fixtures Sec. 3. *See also State ex rel. State Highway Commission v. Wally Hutter Oil Co.*, 467 S.W.2d 279 (Mo.App.1971).

In the case at bar, plaintiff seeks to prevail by asserting comparatively easy removability of all items except the barbecue pit. Favoring defendants in their contention that the large items were improvements, compensable in the initial condemnation proceeding, would be (a) the prohibitive cost of relocating the large and heavy items (plaintiff acknowledges that he has never tried to transfer such items from one of his restaurants to another), (b) the absence of proof that plaintiff's vendor, Accurso, if he may be supposed to have installed most of the items, intended that they be transferrable to another location, and (c) reliance on the classification by

---

**3.** While perhaps not pertinent to decision, the trial assumption that plaintiff was the tenant of the owner seems incorrect. It appears from the appraisals (Def. Exh. 1, 2 and 3) that the plaintiff was a sublessee from the tenant who leased

the hotel premises. Plaintiff testified that he had no written or oral lease arrangements but simply paid rent in cash at the hotel desk to unknown parties.

three appraisers of most of the large and heavy items as permanent improvements.

Judge Friendly's *Certain Property* decision held the condemnor (the United States) liable to pay for the air conditioning machinery and a water tower in a restaurant, as well as a sink, and referred to cases in which a "walk-in refrigerator" and a refrigerating machine seem to have been treated as improvements. Property should be treated as "mere personalty," unaffected by condemnation, when it is " 'removable with such little difficulty or loss in value as to have retained its personal character.' " 344 F.2d at 149. Judge Friendly thought it nearly intolerable for a condemnor to "foist on tenants" unconnected machinery that "will lose a large measure of its value if removed for use elsewhere." [4]

The Government failed in *Certain Property* in its argument, paralleling that of plaintiff here, that the items in question were easily detached and therefore not taken in the original condemnation proceeding. Judge Friendly's decision is thus consistent with the view of the initial appraisers here and of Southerland that the large items should be treated as improvements rather than removable personal property.

While the *Matz* case reaches a different result, it is in a different context, and the opinion itself emphasizes the importance of the context. The *Dockery* case does fit the pattern of the *Certain Property* ruling in holding the original condemnor liable for installed machinery and equipment under an "improved property" concept.[5]

Judgment will be entered in favor of defendants. SO ORDERED.

---

**4.** I take it that loss in value occurs when the severed item would be very expensive to dismantle and relocate.

**5.** I am not entirely comfortable with the theory that plaintiff could have been adequately compensated in the original condemnation case but plaintiff does not show that he would *not* have been appropriately paid. If there would have been trouble in claiming compensation for the major items then this case does have some intrinsic appeal, but it is difficult to find a principled means of ruling for plaintiff in some specified amount exceeding the moving costs allowed by defendants. At various times, but not simultaneously, the parties seem to have been trying to settle the claim for about $10,000, which might have been a good compromise but not a figure I am able to reconstruct.