ACKERLEY COMMUNICATIONS OF
FLORIDA, INC., Plaintiff–Appellee,

v.

Kaye HENDERSON, Secretary of Trans-
portation, State of Florida Department
of Transportation, in his official capac-
ity, Defendant–Appellant.

No. 88–5884.

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1989.

James W. Anderson, Dept. of Transp.,
Maxine F. Ferguson, Tallahassee, Fla., for
defendant-appellant.

Jacques B. Gelin, Aplt. Sec., Land & Nat-
ural Resources Div., D. of J., Washington,
D.C., for amicus, U.S.

Walter E. Diercks, Rubin, Winston &
Diercks, Washington, D.C., for plaintiff-ap-
pellee.

Before HILL and EDMONDSON,
Circuit Judges, and GARZA *, Senior
Circuit Judge.

GARZA, Senior Circuit Judge:

We are asked to consider whether the
Uniform Real Property Acquisition Policy,
42 U.S.C. Sec. 4652, requires that billboard
owners whose underlying land is con-
demned by the power of eminent domain
are entitled to the fair market value of
their leasehold interest or merely relocation
costs. Because we rule that the district
court does not have jurisdiction to consider
this appeal, we do not reach this issue, and
we remand and order the district court to
dismiss this case for lack of subject matter
jurisdiction.

*Background*

Ackerley Communications of Florida,
Inc. ("Ackerley") owns numerous bill-
boards throughout the state of Florida.
The billboards involved in this case are all
located on property pursuant to leases be-
tween Ackerley and the fee owner. The
Florida Department of Transportation
("FDOT") is constructing a segment of in-
terstate highway as part of a federally-

* Honorable Reynaldo G. Garza, Senior U.S. Cir-
cuit Judge for the Fifth Circuit, sitting by desig-

nation.

funded project. As part of this project, FDOT has been acquiring real property by the power of eminent domain.

Ackerley's billboards are located on some of the condemned property. FDOT provided Ackerley with written offers of compensation for its billboards based upon the reproduction cost minus depreciation of the billboards. Ackerley contends that it instead is entitled to the fair market value of the billboard before removal.

Ackerley filed suit in United States District Court against Kaye Henderson in his official capacity as Secretary of FDOT. The suit was filed under 42 U.S.C. Sec. 1983 and alleged that Ackerley had been injured by past and threatened future violations of the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. Sec. 4601, *et seq.* The suit sought a declaratory judgment that the URA was being violated, an injunction against Henderson requiring him to comply with the URA as part of any federally-funded highway project, and attorney's fees under 42 U.S.C. Sec. 1988. The District Court granted declaratory judgment and an injunction in Ackerley's favor, and Henderson appeals here from that decision.

*Jurisdiction*

42 U.S.C. Sec. 1983, under which jurisdiction of the District Court is alleged, provides that:

> Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The Supreme Court has recognized two exceptions to the applicability of Sec. 1983 to statutory violations. One does not have a private right of action under Sec. 1983 if Congress has foreclosed private en-

forcement of that statute in the enactment itself, or if the statute does not create enforceable rights, privileges, or immunities. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Middlesex City Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

■ In determining whether Sec. 1983 enforcement of a particular statute is appropriate, this court must look to the intent of Congress in passing the URA. *Middlesex City,* 453 U.S. at 20, 101 S.Ct. at 1541. Since there is no specific indication of Congressional intent in Sec. 302 of the URA, we must look to the legislative history of that Act to resolve this issue.

It is clear from our examination of the legislative history that Congress intended that Sec. 302 be reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 551 *et seq.*[1] When the Uniform Relocation Act was introduced in the Senate, it contained only three titles and no provisions regarding judicial review. It was referred to the Senate Committee on Government relations where it was assigned to the Subcommittee on Intergovernmental Relations. After extensive hearings, the bill was reported to committee and was ultimately passed by the Senate on October 27, 1969, with several amendments. *See* 115 Cong.Rec. 31533–31535 (1969). One important amendment was the addition of a fourth title providing judicial review of agency action. The report of the Government Operations Committee described the nature of the added section: "The committee added title IV, which states, in section 401, that provisions ... of title V, United States Code [Administrative Procedure Act], shall apply to any action of a Federal agency undertaken through titles II and III." S.Rep. No. 91–488, 91st Cong., 1st Sess. 1, 4 (1969). Thus, it seems clear that the Senate version of the bill intended re-

---

**1.** Other courts which have reviewed the legislative history have reached the same conclusion. A particularly thorough analysis of the legislative history of the URA appears in *Barnhart v. Brinegar,* 362 F.Supp. 464 (W.D.Mo.1973).

view under the Administrative Procedure Act.

The bill next was sent to the House of Representatives, where it was referred to the Public Works Committee, which completely revised the bill as passed by the Senate. Title IV of the Senate bill, which addressed judicial review, was replaced by a new Sec. 102 of the House bill, which precluded judicial review in all circumstances:

> (a) Any determination by the head of a Federal agency administering a program or project as to payments under titles II and III of this Act shall be final and no provision of such titles shall be constructed to give any person a cause of action in any court, nor may any violation of either of such titles be raised as a defense by such person in any action.
> (b) The provisions of section 301 [which is now 42 U.S.C. Sec. 4651] of title III of this Act create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

116 Cong.Rec. 40164 (1970). The purpose behind this section was explained in the House Committee's Report, which stated:

> The committee has considered, but does not agree with, proposals which would make the benefits provided by the bill subject to judicial review. The committee agrees with the judgment of the Department of Justice, and others, who believe that this would add an unnecessary burden to the over-crowded courts. *The primary purpose of the judicial review proposals is to give recognition to the principle that such benefits should be viewed as administrative payments to displaced persons.* The committee believes that this objective can be achieved by the clear language of the bill which makes relocation payments and assistance, and the availability of suitable replacement housing for displaced persons, matters of congressional policy and makes agency heads responsible for faithful execution....

H.R.Rep. No. 91–1656, 91st Cong., 2d Sess. at 5–6, 1970 U.S.Code Cong. & Admin. News, pp. 5850, 5854–5 (emphasis supplied). The bill, as amended, was passed by the House on December 7, 1970. 116 Cong.Rec. 40163–172 (1970).

The Senate wanted to avoid having to send the bills to conference committee, so Senator Muskie moved on the floor of the Senate to accept the House version of the bill, but proposed the deletion of section 102(a) of the bill, and renumbering section 102(b) to 102(a), and so on with the rest of the subparts. This "compromise" version of the bill passed the Senate, and then subsequently passed the House. The House view that there should be no judicial review of any of the provisions of the URA lost out except for the limitations that were retained in Sec. 102(a). We can presume that the Senate view that judicial review under the APA was desirable for the remainder of the sections won out.

This explains how Sec. 102(a) of the present URA, which states that Sec. 301 of the Act does not create any rights or liabilities and is therefore not judicially reviewable, *does not* preclude judicial review of Sec. 302, under which the case before us arises. However, as the previously quoted Senate Government Operations Committee Report and the House Committee Report indicate, judicial review was to be under the Administrative Procedure Act: there was not even a hint that judicial review was intended under Sec. 1983. We cannot, however, end our analysis here, for there is yet another twist to this story that will next be considered.

In 1980, the Supreme Court decided the case of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). That case held that 42 U.S.C. Sec. 1983 authorizes suits by private citizens to redress violations by state officials of rights created by federal statutes. Appellee urges that, since this case was not in existence at the time the URA was passed, the Congress' intent to have enforcement of the URA under the APA rather than Sec. 1983 is understandable. We find this argument unpersuasive. *Maine v. Thiboutot* was not the first case to hold that violations of general federal statutes, rather than just civil rights statutes, are actionable under

Sec. 1983. At the time that the URA was passed, in December 1970, there was a line of cases which held that Sec. 1983 could form the basis for a suit predicated on the violation of a federal non-civil rights statute. *See Greenwood v. Peacock,* 384 U.S. 808, 829–30, 86 S.Ct. 1800, 1813–14, 16 L.Ed.2d 944 (1966) (under Sec. 1983, officers can be held liable not only for violations of rights conferred by the civil rights laws, but for violations of other federal constitutional and statutory rights as well); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (can bring suit in federal court under Sec. 1983 to secure compliance with the provisions of the Social Security Act); *King v. Smith,* 392 U.S. 309, 311, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118 (1968) (state cohabitation provision inconsistent with the Social Security Act—jurisdiction was under Sec. 1983); *Edelman v. Jordan,* 415 U.S. 651, 675, 94 S.Ct. 1347, 1361–62, 39 L.Ed.2d 662 (1974) ("It is, of course, true that *Rosado v. Wyman* held that suits in federal court under Sec. 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating states.") (citations omitted). Congress could have expressly provided that claims against federal agencies which fail to comply with the URA would be brought under Sec. 1983, but instead chose the APA as the enforcement mechanism. It is clear from the House Committee report that proponents of judicial review, whose position eventually carried the day, favored review under the APA.[2]

This holding is in accord with other courts which have considered the issue. In *Whitmier & Ferris Co. v. City of Buffalo,* 89 A.D.2d 447, 455 N.Y.S.2d 454 (1982), the New York Appellate Division held in a billboard condemnation case that the remedy for alleged violations of 42 U.S.C. Sec. 4652 is limited to actions under the APA. The *Whitmier* court also found, and we agree, that Congress did not intend to provide redundant Sec. 1983 enforcement in addition to enforcement under the APA, since Congress intended to create a very limited

right of review of this complex and carefully drafted statute. *Id.*

In *Vitale v. City of Kansas City, Mo.,* 678 F.Supp. 220 (W.D.Mo.1988), the U.S. District Court for the Western District of Missouri considered a challenge to an administrative order refusing to give consent to payment from federally-contributed funds incidental to a state court condemnation of premises. The plaintiff asked the court "to reject the administrative decision as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. Sec. 706. [Administrative Procedure Act]" *Id.* at 222. While this court obviously is not bound by these holdings, we nonetheless find them persuasive on the issue before this court.

*Conclusion*

We find that Congress intended that the Administrative Procedure Act would be the exclusive remedy for alleged violations of the URA. Therefore, we hold that the district court did not have jurisdiction under 42 U.S.C. Sec. 1983 to consider this case, and we therefore remand the case and order that it be DISMISSED for lack of subject matter jurisdiction.

---

**2.** The House Committee Report noted that "[t]he primary purpose of the judicial review proposals is to give recognition to the principle that such benefits should be viewed as administrative payments to displaced persons." *See* p. 3980, ―― supra.