**LOUISIANA DEPARTMENT OF HIGHWAYS, Plaintiff,**

v.

**William T. COLEMAN, Jr., Secretary of the U. S. Department of Transportation and Norbert T. Tiermann, Federal Highway Administrator, Defendants.**

**Civ. A. No. 76–113.**

United States District Court, M. D. Louisiana.

Jan. 27, 1978.

868 and 537 F.2d at 228 (supporting government position).

Jonathan C. Harris, Asst. Gen. Counsel, Dept. of Transp. and Development, State of La., Baton Rouge, La., for plaintiff.

Cheney C. Joseph, Jr., U. S. Atty., Robert S. Leake, Asst. U. S. Atty., M. D. La., Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This case arises under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the Act), 42 U.S.C. § 4601 et seq. The facts are not in dispute. Plaintiff, Louisiana Department of Highways, pursuant to its power of eminent domain, acquired certain land and improvements in Caddo Parish, Louisiana, for the purpose of constructing a highway (Interstate Route 220), which project was scheduled to receive Federal financial assistance. Part of the land acquired included the dwelling and homesite of one John D. Hand, Jr., in which Mr. Hand had lived for more than 180 days prior to the taking. Consequently, Mr. Hand became a "displaced person" within the meaning of the provisions of 42 U.S.C. § 4601(6). When the Highway Department took Mr. Hand's property, they paid him $83,226.00 for it. At the time of the taking, Mr. Hand's property was encumbered with a mortgage having an unpaid principal balance of $16,994.84, and bearing interest at the rate of 5½% per year. With the money he received from the Highway Department, Mr. Hand paid off that mortgage in full, leaving him with $66,994.84 in cash. He then purchased what all agree was a "decent, safe and sanitary replacement dwelling" for the sum of $42,750.00. While he could have paid cash for this new dwelling out of the proceeds which he received from the taking of his prior residence, and actually still had money left over, he chose, instead, to borrow $20,000.00 to apply on the purchase price of the replacement dwelling. At that time the prevailing rate of interest on home mortgage loans was 8¾%, and the mortgage on the replacement dwelling which he gave to secure the loan bears interest at that rate. The Louisiana Highway Department refused to pay Mr. Hand the differential between the interest cost of his prior mortgage loan and the increased cost of his new loan due to the difference in interest rates on the two loans. As a result of the Highway Department's refusing to pay this differential, the defendants, pursuant to the provisions of 42 U.S.C. § 4630, refused to advance any further Federal funds for this highway project. This suit, in which the plaintiff seeks a mandatory injunction or a writ of mandamus forcing the defendants to advance Federal funds for the completion of this project, followed.

The plaintiff Highway Department takes the position that since Mr. Hand received more in cash for his old house than he paid for his new one, and since the cash received by him for his old house was more than enough to pay off his existing mortgage and completely pay for his new home, he did not *have* to borrow money to acquire the replacement home and therefore he should not be paid the interest differential.

Defendants, on the other hand, contend that the provisions of 42 U.S.C. § 4623 require the interest cost differential to be paid to Mr. Hand, and that until that is done, 42 U.S.C. § 4630 requires that no Federal financial assistance can be made available for this highway project. Since there is no dispute as to the material facts in this case, plaintiff moved for summary judgment, and the defendants filed a cross motion for summary judgment. It is in that posture that the matter comes before this Court, and the Court concludes that defendants' cross motion for summary judgment should be granted.

The statute in question, 42 U.S.C. § 4623, provides, in pertinent part, as follows:

"(a)(1) In addition to payments otherwise authorized by this sub-chapter, the head

of the Federal agency shall make an additional payment not in excess of $15,000 to any displaced person who is displaced from a dwelling actually owned and occupied by such displaced person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property. Such additional payment shall include the following elements:

"(A) * * *

"(B) The amount, if any, which will compensate such displaced person for any increased interest costs which such person is required to pay for financing the acquisition of any such comparable replacement dwelling. Such amount shall be paid only if the dwelling acquired by the Federal agency was encumbered by a bona fide mortgage which was a valid lien on such dwelling for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of such dwelling. Such amount shall be equal to the excess in the aggregate interest and other debt service costs of that amount of the principal of the mortgage on the replacement dwelling which is equal to the unpaid balance of the mortgage on the acquired dwelling, over the remainder term of the mortgage on the acquired dwelling, reduced to discounted present value. The discount rate shall be the prevailing interest rate paid on savings deposits by commercial banks in the general area in which the replacement dwelling is located."

The only dispute involved here is whether or not that statute provides for the payment of interest differential only in those cases where, after the taking, there is not enough cash left over, after payment of an existing mortgage, with which to purchase a replacement dwelling. Plaintiff contends that subsection (B) above requires the payment of interest or mortgage differential only for the amount of a mortgage debt which represents a price paid for a replacement dwelling in excess of the "cash-on-hand" after the taking of the acquired

dwelling. Defendant contends that the payment is due if the displaced person in fact mortgages the replacement dwelling, whether there was a financial need to do so or not. We conclude that within certain limits, the defendants' views more properly reflect the intent of this Act.

■ The declaration of policy surrounding this statute is found in 42 U.S.C. § 4621:

"The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole."

A reading of this Act, 42 U.S.C. §§ 4601–4655, makes it abundantly clear that its major purpose is to assure that one who is displaced by a federally assisted program does not suffer a loss if that loss can be reasonably compensated by a money payment. Not only is a displaced person guaranteed the fair market value of his property, if taken, but he is assured of a payment in excess of that amount if that is necessary for him to acquire a "comparable replacement dwelling." In addition, he is, within certain stated limits, entitled to receive additional payments for moving costs, losses of tangible personal property, costs of searching for a replacement property, and "increased interest costs." 42 U.S.C. §§ 4622–4623.

■ There is no doubt but that the Congress considered a favorable interest rate on an existing mortgage note to be a valuable property right when the current rate of interest is higher on a newly acquired mortgage. Whether or not the displaced person is forced, because of his financial condition, to avail himself of a more expensive mortgage loan in order to acquire a replacement dwelling is of no moment. The mere fact that he was forced to relinquish his property to the taking authority, and thus relinquish his right to have available the proceeds of his existing mortgage at the more favorable interest rate for the

remainder of the term of that mortgage, for whatever purpose he wished to use that money, constituted a deprivation of a valuable property right for which, under the Act, he was entitled to be paid. The limitation placed by the Act on the amount to which he is entitled to be paid for that particular property right is:

"\* \* \* the excess in the aggregate interest and other debt service costs of that amount of the principal of the mortgage on the replacement dwelling which is equal to the unpaid balance of the mortgage on the acquired dwelling, over the remainder term of the mortgage on the acquired dwelling, reduced to discounted present value."

We interpret this to mean that where, as here, the displaced person had an unpaid principal balance on his existing mortgage of $16,994.84, with 189 months left to run on its term, with the mortgage note bearing interest at 5½% per annum, and where, as here, the displaced person mortgages his replacement dwelling, for whatever reason, in an amount equal to or in excess of the unpaid principal balance on the old mortgage note, and is required to pay 8¾% interest on that new mortgage note, for a term as long as, or in excess of the remaining term on the old mortgage, he is entitled to be paid the difference between the 5½% interest cost that he would have paid over the 189 months remaining on his old mortgage, and the 8¾% interest cost that he will be required to pay over the same period of time, i. e., 189 months, on the portion of his new mortgage that does not exceed the unpaid principal balance of his old existing mortgage—in this case, on $16,994.84—as of the date of the taking. That difference in interest payable at 5½% and the interest payable at 8¾% on the same amount of principal over the same period of time, discounted to present value, is, under the Act, the value of the property right for which this displaced person must be paid, so long as the amount of his total excess payments does not exceed $15,000.00.

This is essentially, if not exactly, the interpretation placed on the Act by the Federal Highway Administration, the agency which administers the Act, and its interpretation, if not clearly erroneous, must be given great weight. See *Intercounty Construction Co. v. Occupational Safety and Health Review Commission*, 522 F.2d 777, 779 (CA 4–1975), cert. den. 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82; *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), reh. den. 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). We do not find the wording of this statute to be ambiguous, nor do we find the interpretation placed upon it by the Federal Highway Administration either erroneous or unreasonable. Therefore, for these reasons, plaintiff's motion for summary judgment will be denied, and defendants' cross motion for summary judgment will be granted, denying plaintiff's demands and dismissing this suit at plaintiff's cost. Judgment will be entered accordingly.