STATE of Oklahoma ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant,

v.

Billy E. and Martha J. LITTLE, Husband and Wife, and the Cherokee County Treasurer, Defendants/Appellees.

No. 96,978.

Supreme Court of Oklahoma.

Sept. 21, 2004.

---

708

Barry K. Roberts, Norman, OK, for Appellant.

Tim K. Baker, Tim K. Baker and Associates, Tahlequah, OK, for Appellees.[1]

OPALA, V.C.J.

¶ 1 The following questions are pressed for decision on certiorari: (1) Does landowners' receipt of an administratively determined relocation assistance payment preclude them from seeking reimbursement for relocation expenses in the condemnation proceeding? and (2) Does the record establish that the jury compensated landowners for both the fair market value of certain improvements and for the cost of reestablishing the same improvements at their new business location? We answer both questions in the negative, but in the absence of a timely landowners' quest for certiorari relief we leave undisturbed the Court of Civil Appeals' disposition in favor of post-remand reduction in the amount of the judgment. Also left undisturbed is the Court of Civil Appeals' disposition of the landowners' application for an appeal-related counsel fee.

# I

## STATEMENT OF THE FACTS

¶ 2 The Oklahoma Department of Transportation ("ODOT") brought this condemnation proceeding on behalf of the State of Oklahoma to acquire approximately one acre of land[2] located in Cherokee County for the purpose of widening State Highway 82 near Keys, Oklahoma. The land was owned by Billy E. and Martha J. Little ("landowners") and was used by them to operate a boat repair business. Although only a portion of the property would ultimately be occupied by the widened highway, ODOT determined that it was necessary to acquire the entire tract. Negotiations to purchase the property failed, and ODOT initiated this condemnation proceeding on 27 October 1998. Court-appointed commissioners assessed just compensation

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari paperwork filed in this court.

2. The landowners' property consisted of 1.21 acres of which .20 acres was already burdened by an easement for the existing highway.

for the land, building, and other improvements at $199,100.00. Both parties took exception to the commissioners' report and demanded a jury trial.

¶ 3 After certain preliminary issues were brought to a conclusion,[3] a jury trial was held on 12 and 13 March 2001. A verdict was returned assessing just compensation at $265,000.00. Judgment in that amount was entered on 27 March 2001. ODOT moved for judgment notwithstanding the verdict, for remittitur, or for a new trial. All of its motions were denied.

¶ 4 ODOT appealed, claiming that the judgment contained both unauthorized and duplicate elements of compensation. Landowners moved to dismiss the appeal on the grounds that it had been filed out of time. The Court of Civil Appeals, Division IV ("COCA"), agreed that the appeal had not been timely filed and ordered it dismissed. We granted certiorari, vacated the intermediate appellate court's opinion that dismissed the appeal, and remanded the cause to that court for disposition on the merits. The COCA then affirmed the judgment in part, reversed it in part, and remanded the proceeding to the trial court with instructions to reduce the judgment in an amount to be determined upon remand. ODOT sought and was granted certiorari. *Landowners did not file a certiorari petition of their own.* We now vacate the COCA's opinion except for that portion which orders a post-remand reduction in the amount of the judgment and that which grants landowners' request for an appeal-related counsel fee. In doing so, we affirm the trial court's judgment in part, reverse it in part, and remand the cause to the trial court for further proceedings to be consistent with this pronouncement.

## II

## ODOT'S APPEAL AND THE COCA DISPOSITION

¶ 5 Prior to the initiation of this condemnation proceeding, landowners received approximately $13,500.00 as reimbursement of relocation expenses pursuant to the federal and state relocation assistance acts.[4] Although landowners admitted that they received this payment, the specifics of how they came to receive the payment and the payment's amount were not part of the evidence submitted in the condemnation proceeding.[5] We do know that landowners did not appeal the payment's amount through the administrative appeals process.

¶ 6 In the condemnation proceeding ODOT moved *in limine* to prevent landowners from introducing into evidence any proof of their moving and related expenses, arguing that the federal and state relocation assistance acts' administrative process was the exclusive means of obtaining reimbursement of such expenses. ODOT argued that landowners' failure to pursue the administrative appeals procedure available to a party who is dissatisfied with the amount of a relocation assistance payment foreclosed their access to a judicial forum to seek reimbursement of any additional relocation expenses. The trial court disagreed and allowed the jury to consider as a compensable item the amount of relocation expenses landowners incurred that had not been reimbursed by the relocation payment landowners received. The jury awarded landowners $265,000.00 in a lump sum.

---

3. Landowners not only took exception to the commissioners' determination of just compensation, but also objected to the extent of the taking, arguing that the State needed only a portion of their property for the highway-widening project. While this objection was under consideration, ODOT sought an emergency order to have landowners removed from the property so that utility construction could proceed. The court denied landowners' objection. Landowners then filed an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition in this court reasserting their objection to the extent of the taking. The trial court denied the State's appli-

cation for an emergency order and this court denied landowners' writ request.

4. The federal relocation assistance act, known as the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 is cited *infra* at note 9. The Oklahoma Relocation Assistance Act is cited *infra* at note 20.

5. Landowners tell us in one of their briefs that they never made a claim for a relocation assistance payment. They contend instead that ODOT simply offered them the money.

¶7 ODOT appealed, again arguing that landowners' exclusive remedy for recovery of relocation expenses was through the administrative procedure set up by the federal and state relocation assistance acts and their failure to exhaust administrative remedies with respect to the relocation assistance payment they received barred them from seeking any relief in a judicial forum for moving and related expenses. ODOT argued that the lump sum judgment, which included unrecoverable relocation expenses, "exceeded the trial court's jurisdiction" and must be reversed. Landowners argued on appeal that relocation expenses are compensable in a condemnation proceeding and the trial court's reception of evidence of those expenses was appropriate.

¶8 The COCA opinion held both that relocation expenses can be recovered in a condemnation proceeding and that landowners were required to exhaust administrative remedies under the federal and state relocation acts. COCA interwove these two principles by holding that the amount of relocation expenses recoverable in the condemnation proceeding is limited to the difference between the amount of moving expenses landowners actually incurred and the maximum relocation assistance payment to which they would have been entitled had they pursued their administrative remedies to a successful conclusion. Hence the COCA remanded the case to the trial court with directions to determine the maximum amount landowners could have received if they had succeeded in an administrative appeal. COCA then instructs the trial court to reduce the judgment by any additional amount landowners could have received but did not due to their inaction. According to COCA's reduction formula, landowners' recovery must be reduced by either $6,500.00 or by $2,594.00, depending on which section of the federal relocation assistance act the trial court decides is applicable to them.

¶9 ODOT, who agrees with the exhaustion-of-administrative-remedies theory adopted by the COCA opinion, seeks certiorari not to challenge the COCA's reasoning, but to obtain corrective relief—reversal of the judgment—denied by the COCA. ODOT contends that the COCA should have reversed the judgment in its entirety for landowners' failure to exhaust administrative remedies rather than remanding the cause to the trial court for a hearing to determine a reduction in the amount of the judgment. Landowners, who stand to lose at most $6,500.00 of their $265,000.00 judgment, did not file their own certiorari petition.

## III

### STANDARD OF REVIEW

■■■ ¶10 ODOT raises two issues on certiorari. First, although ODOT agrees with the COCA's holding that landowners had to exhaust administrative remedies under the federal and state relocation assistance acts, it challenges the COCA's remand-and-reduction disposition as inconsistent with that holding because it permits landowners to recover *some* of their relocation expenses in the condemnation proceeding. ODOT contends that landowners are not entitled to recover *any* of their relocation expenses outside of the federal and state administrative relocation assistance scheme. Although neither ODOT nor landowners challenge the COCA's exhaustion holding, we nevertheless must consider its correctness in order to determine whether ODOT is entitled to the relief it seeks. We are hence called upon to analyze the interplay of the federal and state relocation assistance acts with state eminent domain law. Statutory interpretation raises a legal question which is subject to a *de novo* standard of review.[6] An appellate court is endowed with plenary, independent and nondeferential authority to re-examine a trial court's legal rulings.[7]

■■ ¶11 The second issue raised by ODOT is whether the trial court erred when it permitted landowners' experts to testify as to the cost of installing certain improvements at landowners' new business location. ODOT contends that this evidentiary ruling was in

6. *Fulsom v. Fulsom,* 2003 OK 96, ¶2, 81 P.3d 652, 654.

7. *Kluver v. Weatherford Hospital Authority,* 1993 OK 85, ¶14, 859 P.2d 1081,1084; *see also Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

error because the experts had already included the value of those very same improvements in their assessment of the fair market value of the condemned property. This error, ODOT claims, misled the jury into awarding landowners double compensation. The range of inquiry into the value of property taken or damaged in eminent domain proceedings is left largely to the discretion of the trial court, and unless that discretion is abused the trial court's ruling admitting or excluding such evidence will not be disturbed.[8]

## IV

## UNDER THE CIRCUMSTANCES OF THIS CASE, LANDOWNERS WERE ENTITLED TO RECOVER UNREIMBURSED MOVING AND RELATED EXPENSES IN THE CONDEMNATION PROCEEDING

¶12 The Uniform Relocation Assistance and Real Property Acquisition Act of 1970

(the "FURA")[9] was enacted by the United States Congress to standardize benefits available to persons and businesses physically displaced and economically harmed due to the acquisition of real property for use in federal and federally assisted projects.[10] Its major purpose is to assure that one who is displaced by a federally assisted program does not suffer a loss if that loss can be reasonably compensated by a money payment.[11] It not only guarantees a displaced person the fair market value of his or her property, but also authorizes additional payments and services designed to reduce or eliminate the unfair burden displacement visits on citizens who must relocate for the public good.[12] State agencies must comply with the FURA's payment and assistance provisions as a condition for receiving federal funding of programs and projects that cause displacement.[13]

¶13 Congress has directed the head of the Department of Transportation, in coopera-

---

**8.** *State ex rel. Dept. of Highways v. Aker*, 1973 OK 21, ¶14, 507 P.2d 1227, 1230; *City of Tulsa v. Horwitz*, 1928 OK 350, ¶14, 131 Okla. 63, 267 P. 852, 854; *State ex rel. City of Ardmore v. Winters*, 1945 OK 49, ¶5, 195 Okla. 243, 156 P.2d 798, 800; *City of Enid v. Moyers*, 1945 OK 281, ¶5, 196 Okla. 470, 165 P.2d 818, 820.

**9.** *See* the provisions of 42 U.S.C. § 4601 *et seq.*

**10.** See the provisions of 42 U.S.C. § 4621(b), which state:
"This subchapter establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance. The primary purpose of this subchapter is to ensure that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons."

**11.** *Louisiana Dep't of Highways v. Coleman*, 444 F.Supp. 151, 154 (M.D.La.1978)

**12.** *Id. See* the provisions of 42 U.S.C. §§ 4622–23. The FURA consists of three parts. Title I, 42 U.S.C. § 4601 and § 4602, provides generally applicable definitions along with limitations on the legislation's effect on property acquisitions. Title II, 42 U.S.C. §§ 4621–38, sets out the purpose of the enactment—to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of federal and federally assisted programs. It also authorizes the payment of benefits to persons displaced by fed-

eral or federally assisted programs and directs the Department of Transportation to issue such regulations as are necessary to carry out the enactment's purposes. Title III, 42 U.S.C. §§ 4651–55, sets out guidelines for the acquisition of land by federal agencies, policies for the acquisition of buildings, structures and other improvements when a federal agency acquires any interest in real property in any State, and a requirement that state agencies give satisfactory assurances to the relevant federal agency of compliance with the FURA before approval may be given to any federally assisted program or project which will result in the acquisition of real property.

**13.** *See* the provisions of 42 U.S.C. § 4630 and § 4655. The provisions of 42 U.S.C. § 4630 state:
"Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a displacing agency (other than a Federal agency), under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the displacement of any person on or after January 2, 1971, unless he receives satisfactory assurances from such displacing agency that—
(1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under sections 4622, 4623, and 4624 of this title;
(2) relocation assistance programs offering the services described in section 4625 of this

tion with the Secretary of Housing and Urban Development, the heads of other federal agencies responsible for funding relocation and acquisition actions, and State and local governments to promulgate regulations for the implementation and administration of the FURA.[14] The regulations provide a procedure for making a claim for relocation payments [15] and an administrative review procedure for appealing an adverse decision on a claim.[16] In neither case is there a requirement for a hearing. Judicial review through the federal Administrative Procedure Act is available for all final federal agency actions taken under the FURA with the exception of actions taken pursuant to the provisions of § 4651, which address real property acquisition practices.[17]

title shall be provided to such displaced persons;
(3) within a reasonable period of time prior to displacement, comparable replacement dwellings will be available to displaced persons in accordance with section 4625(c)(3) of this title."
The provisions of 42 U.S.C. § 4655 state:
(a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—
(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title [policies governing acquisitions of buildings, structures and improvements], and
(2) property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 [transfer of title expenses] and 4654 [litigation expenses] of this title.
(b) For purposes of this section, the term "acquiring agency" means—
(1) a State agency (as defined in section 4601(3) of this title) which has the authority to acquire property by eminent domain under State law, and
(2) a State agency or person which does not have such authority, to the extent provided by the head of the lead agency by regulation.

14. The pertinent provisions of 42 U.S.C. § 4633 [Duties of lead agency] state:
"(a) General provisions. The head of the lead agency shall—
(1) develop, publish, and issue, with the active participation of the Secretary of Housing and Urban Development and the heads of other Federal agencies responsible for funding relocation and acquisition actions, and in coordination with State and local governments, such regulations as may be necessary to carry out this Act; ..."
The regulations appear at 49 C.F.R. Subtitle A, Part 24, § 24.1 et seq.

15. See the provisions of 49 C.F.R. Subtitle A, § 24.207. The regulations set out the procedures for making a "proper application" or claim for payment which entails filing a written application for payment and providing supporting documentation. The regulations contain no requirement that a hearing be provided. If an application is denied in whole or in part or if the agency refuses to consider the claim on its merits, it must promptly notify the claimant in writing of its decision and inform him or her of the procedures for appealing the decision.

16. See the provisions of 49 C.F.R. Subtitle A, § 24.10. The regulations provide that any aggrieved person may file a written appeal with the relevant agency in any case in which the person believes the agency has failed to properly consider the persons's application for assistance. This includes an appeal of the person's eligibility for as well as the amount of a relocation payment. The regulations provide that a person may be represented by an attorney at the person's own expense. They require the agency to consider all pertinent justification and other material submitted by the appellant as well as all other available information that is needed to ensure a fair and full review of the appeal. The agency must provide the appellant with a written decision on the appeal and, if full relief is not granted, must advise the appellant of his or her right to seek judicial review.

17. See the provisions of 5 U.S.C. § 701 et seq. The FURA does not explicitly provide for judicial review of agency actions taken under its auspices and a review of the FURA's legislative history shows that prior to its adoption there was considerable controversy in Congress over the question of judicial review. The version of the bill passed by the Senate contained a provision that all agency actions under the FURA would be reviewable through the Administrative Procedure Act. See 115 Cong. Rec. 31535 (1969).The House version rejected any private right of action. See 116 Cong. Rec. 40172 (1970). Committees of the two chambers eventually worked out a compromise. Those courts that have reviewed the legislative history of the Act have concluded that the compromise authorized judicial review through the Administrative Procedure Act of agency action taken under the provisions of Title II, 42 U.S.C. § 4621 et seq., and under §§ 302–304 of Title III of the FURA, 42 U.S.C. §§ 4652–54, while explicitly rejecting judicial review of agency actions taken pursuant to § 301, 42 U.S.C.

¶14 Oklahoma in 1971 enacted legislation corresponding to the provisions of the FURA.[18] Amended in 1988,[19] the Oklahoma Relocation Assistance Act (the "ORAA")[20] provides a state-law basis for the payment of relocation benefits, the delivery of relocation assistance, and the implementation of procedures and practices necessary to satisfy the requirements of the FURA.[21] ODOT has published a regulation stating that its policies and procedures for providing relocation payments and advisory assistance shall conform to federal and state laws and regulations.[22] The terms of § 1099 of the ORAA provide for judicial review by "any person or business concern aggrieved by final administrative determination, as provided by the Administrative Procedures Act [citation omitted], concerning eligibility for relocation payments authorized by this act...."[23]

§ 4651 [real property acquisition policies]. The provisions of 5 U.S.C. § 702 ["A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"]and 5 U.S.C. § 704 ["Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"] are cited as authority for the right to judicial review under the Administrative Procedure Act. *See e.g. Barnhart v. Brinegar,* 362 F.Supp. 464, 468–473 (W.D.Mo.1973); *Ackerley Communications of Florida, Inc. v. Henderson,* 881 F.2d 990 (11th Cir.1989); *Whitmier & Ferris Co., Inc., v. City of Buffalo,* 89 A.D.2d 447, 455 N.Y.S.2d 454 (1982); *U.S. v. 320.0 Acres of Land,* 605 F.2d 762, 822 n. 134 (5th Cir.1979); *Starke v. Secretary, U.S. Dept. of Housing and Urban Development,* 454 F.Supp. 477, 480 (W.D.Okla. 1977); *U.S. v. 40.00 Acres of Land,* 427 F.Supp. 434, 441 n. 2 (W.D.Mo.1976); *Tullock v. State Highway Comm'n,* 507 F.2d 712, 715 (8th Cir. 1974); *Ledesma v. Urban Renewal Agency of Edinburg, Texas,* 432 F.Supp. 564, 566 (S.D.Tex., 1977); *Whitman v. State Highway Commission of Missouri,* 400 F.Supp. 1050, 1059 (W.D.Mo., 1975); *Beaird–Poulan Division of Emerson Elec. Co. v. Department of Highways,* 441 F.Supp. 866, 869 (W.D.La.1977). Cf. *Paramount Farms, Inc. v. Morton,* 527 F.2d 1301, 1306 (7th Cir.1975) (holding no judicial review available for actions taken pursuant to 42 U.S.C. § 4651). For a thorough discussion of the complex legislative history of the right to judicial review under the FURA, *see Barnhart, supra.*

18. *See* 63 O.S.1971 §§ 1085–99, Laws 1971, Ch. 342, § 1 *et seq.,* eff. July 1, 1971.

19. *See* Laws 1988, c. 315, § 3 *et seq.,* emerg. eff. July 6, 1988.

20. *See* the provisions of 63 O.S.2001 § 1092.1 *et seq.*

21. The provisions of 63 O.S.2001 § 1092.2.A. state in pertinent part:
"When any department, agency or instrumentality of the state ... undertakes any project which results in the acquisition of real property or in any person being displaced from the home, business, or farm of such person, such department, agency or instrumentality of the state ... may provide relocation assistance, and make relocation payments to such displaced person and do such other acts and follow such procedures and practices as may be necessary to comply with the provisions of the Federal Uniform Relocation Act."

22. *See* the provisions of Okla. Admin. Code § 730:20–1–8 [amended at 16 Ok Reg 2030, eff 6–11–99], which state:
"The policies and procedures for the payment of monies for relocation benefits and provisions of advisory assistance shall be uniform on all state transportation projects in accordance with federal and state laws and regulations, and without respect to federal participation."

23. *See* the provisions of 63 O.S.2001 § 1099, which state:
"Any person or business concern aggrieved by final administrative determination, as provided by the Administrative Procedures Act, [citation omitted] concerning eligibility for relocation payments authorized by this act may appeal such determination to the district court of the district in which the land taken for public use is located or in which the project is conducted."
Section 1099's use of the phrase "final administrative determination" is problematic because that phrase is not used in the current version of the Oklahoma Administrative Procedures Act ("OAPA") nor was it used in the statutes governing administrative procedures in effect in 1971 when § 1099 was enacted, the statute's reference to the OAPA notwithstanding. For purposes of the procedure governing judicial review in both the 1971 administrative procedures statutes and in the OAPA, the decision reviewable is either "a final order in an individual proceeding," 75 O.S. 1971 § 318(1), or "a final agency order in an individual proceeding," 75 O.S.2001 § 318 A.1. *See Bird v. Willis,* 1996 OK 116, ¶14, 927 P.2d 547, 551. The term "individual proceeding" means a trial-type hearing for the conduct of which certain statutory procedures are prescribed. *See* the provisions of 75 O.S.1971 §§ 309–12 and 75 O.S.2001 §§ 309–12. The legislature's choice of the phrase "final administrative determination" rather than the phrase "final order" or "final agency order" may reflect that

¶ 15 The payment provisions authorized by the FURA and the ORAA (hereinafter referred to together for convenience as the relocation assistance acts) are implicated in this case because the highway-widening project for which landowners' property was condemned was financed in part by federal money.[24] Landowners admit that they received a payment pursuant to the relocation assistance acts, but they contend the amount they received was insufficient to fully reimburse them for all of their moving and related expenses. ODOT argues that if landowners were dissatisfied with the amount of the relocation assistance payment, their remedy was by an administrative appeal followed by judicial review of ODOT's final order after all administrative remedies were exhausted. ODOT accordingly casts landowners' litigation of relocation expenses in the condemnation proceeding as in effect an attempt to obtain judicial review of ODOT's determination of the relocation assistance payment due them without having first exhausted available administrative review remedies.[25]

■ ¶ 16 Where an aggrieved party brings a lawsuit when adequate administrative relief is available, the action is to be viewed as fraught with a fatal remedial impediment that bars judicial relief.[26] Were this an attempt by landowners to obtain judicial review of an administrative order without first exhausting administrative remedies, we would agree that judicial relief stands barred, but we disagree with ODOT's characterization of the landowners' quest for relief in the condemnation proceeding as such an effort. Landowners took no action in the district court that might reasonably be construed as seeking judicial review of an administrative order. Rather, landowners sought reimbursement of their moving and related expenses in the condemnation

body's awareness that because the FURA does not require a state agency to conduct a trial-type hearing to determine relocation benefits, the resulting decision is not technically a "final order" or "final agency order" as defined in the 1971 administrative procedures statutes or in the OAPA since there is no trial-type hearing or "individual proceeding" involved in the determination of relocation benefits. It is hence unclear how or even whether the OAPA procedures governing judicial review apply to review of an administrative decision on relocation benefits. Even if not strictly subject to appeal under the OAPA, a final administrative determination regarding relocation benefits may be appealable to a district court under the terms of 12 O.S.2001 § 951 if the administrative decision were deemed to be quasi-judicial in nature and if the rules of the agency making the relocation payment decision provide some mechanism by which a person aggrieved by its decision can obtain a trial-type hearing despite the fact that such a hearing is not contemplated by the relocation assistance acts themselves. In this regard, see *Kirschstein v. Haynes*, 1990 OK 8, 788 P.2d 941. Today's pronouncement, which rejects ODOT's characterization of landowners' quest as one for judicial review of ODOT's determination of relocation benefits, makes it unnecessary in this opinion to determine precisely how judicial review may be had of an agency's relocation payment determination.

24. The provisions of § 4622 of the FURA authorize payment to a condemnee of four types of compensation: (1) actual reasonable expenses in moving, (2) actual direct losses of tangible personal property, (3) actual reasonable expenses in searching for a replacement business or farm,

and (4) actual reasonable expenses necessary to reestablish a displaced small business, not to exceed $10,000.00. Alternatively, a displaced person who meets certain criteria established by the head of the federal Department of Transportation may elect to accept a fixed payment not to exceed $20,000.00.

25. In its brief in chief, ODOT states:

"Therefore, when the trial court entered judgment in the amount of $265,000.00, it attempted *to adjudicate the issue of the amount of reasonable relocation allowance that should be paid under the federal and state relocation acts,* and did so before the Littles had exhausted their administrative remedies ...." (emphasis added)

Again in its Supplemental Brief, ODOT states:
"[T]he ORAA is subject to the Administrative Procedures Act by its own terms, and it has always been the law in Oklahoma that in order to appeal an administrative decision to a district court a party must first exhaust his or her administrative remedies."

26. *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, ¶ 6, 800 P.2d 235, 237. The exhaustion doctrine is a prudential rule rather than a jurisdictional bar. *Id.; Walker v. Group Health Services, Inc.,* 2001 OK 2, ¶ 38, 37 P.3d 749, 761–62; *Strate v. A–1 Contractors,* 520 U.S. 438, 451, 117 S.Ct. 1404, 1412, 137 L.Ed.2d 661 (1997). It raises a remedial barrier to judicial relief when an agency's administrative review process is not pursued to conclusion. *Walker, supra,* at ¶ 38, at 762; *Tinker Investment & Mortgage Corp. v. City of Midwest City,* 1994 OK 41, ¶ 12, 873 P.2d 1029, 1038.

proceeding completely separate and apart from any rights and remedies they may have had to reimbursement of relocation expenses under the relocation assistance acts.[27] The issue in this case is not whether landowners were required to exhaust administrative remedies before seeking judicial relief, but whether the relocation assistance acts are the exclusive remedy for reimbursement of relocation expenses and, if not, whether receipt of an administratively determined relocation assistance payment precludes the recipient from seeking identical relief in a judicial forum. ODOT argues that whenever the relocation assistance acts are applicable, they provide the exclusive remedy for the recovery of moving and related expenses.[28]

¶ 17 This proceeding raises the first-impression question of how the relocation assistance acts and state condemnation proceedings interrelate. In *Tate v. Browning–Ferris, Inc.*,[29] we recognized that "[w]here the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive." [30] After reviewing the FURA

and decisions implementing it, we have concluded that Congress did not intend for the FURA to displace federal, state, or local laws providing for payments substantially similar to those FURA makes available. Moreover, we find nothing in the FURA to indicate that the administrative scheme it creates was designed to precede resort to the courts.[31] Rather, the FURA provides a supplementary scheme of recovery under which federal funds can be used to reimburse a person displaced from a home, business, or farm by a federal or federally assisted project for that person's moving and related expenses where such expenses are not otherwise fully compensable under state condemnation law.[32] That this is what Congress intended is evident from the provisions of § 4631(b) of the FURA, which acknowledges the primacy of non-FURA reimbursement, where such remuneration is available, by denying payment under the FURA for any expense already covered by other federal law or by state or local law which serves a substantially similar purpose to and has a substantially similar effect as a FURA payment.[33] The federal

---

27. For this reason, *U.S. v. 249.12 Acres of Land More or Less,* 414 F.Supp. 933 (W.D.Okla.1976), relied upon by ODOT, is inapposite. In that case, the landowners asked the federal district court to take original jurisdiction of a claim under the FURA. The court held that there was no basis for original jurisdiction of a FURA claim and further held that, there having been no final agency order determining relocation assistance, judicial review as provided by the Administrative Procedure Act was also unavailable.

28. ODOT made this argument in its motion in limine, requesting the exclusion of "any information, testimony or evidence, either directly or indirectly, as to any relocation or moving expenses, as this is a federally funded project and the Federal Relocation Act *has exclusive jurisdiction in this area and preempts state law;* ..." (emphasis added) ODOT made the same argument in its motion for new trial, stating:
"The Federal Uniform Relocation Act is a mandatory federal statutory scheme that provides for the relocation of persons and property who are displaced or who have property that must be moved because of some aspect of highway projects that are federally funded. These federal monies cover the costs of moving people and and (sic) personalty and should be excluded from consideration in a condemnation action."
In its Supplemental Brief on certiorari, ODOT does not use the words "exclusive" or "preempt", but states that

"... the district court has always been without jurisdiction to adjudicate any dispute about relocation compensation" and its only function with respect to expenses covered by the Relocation Act is to provide a judicial review remedy to one aggrieved by a final agency determination.

29. 1992 OK 72, 833 P.2d 1218.

30. *Id.* at ¶ 11, at 1226.

31. *Cf. Atkinson v. Halliburton Co.,* 1995 OK 104, 905 P.2d 772 (holding that the state legislature designed the administrative scheme of the Oklahoma Anti–Discrimination Act, 25 O.S.1991 §§ 1101–1901, to precede resort to the courts).

32. *Robzen's, Inc. v. U.S. Dep't. of Housing and Urban Development,* 515 F.Supp. 228 (M.D.Pa. 1981); *Malone v. Division of Administration, State of Florida Department of Transportation,* 438 So.2d 857, 861 (Fla.App.1983).

33. The pertinent provision of 42 U.S.C. § 4631 [Federal share of costs] states:
"No payment or assistance under this subchapter or subchapter III of this chapter shall be required to be made to any person or included as a program or project cost under this section, if such person receives a payment re-

regulations implementing the FURA recognize that compensation made under traditional eminent-domain principles of state law may precede the filing of a FURA claim and, when read in conjunction with 4631(b) of the FURA, implicitly acknowledge that state law condemnation compensation may include items that would also be compensable under the provisions of the FURA.[34]

¶ 18 In short, the relocation assistance acts are not the exclusive remedy for reimbursement of moving and related expenses in those jurisdictions where such expenses are recoverable in a condemnation proceeding. ODOT argues that costs such as moving expenses are not recoverable in a condemnation proceeding in Oklahoma where the condemning authority takes an entire parcel of property. Landowners argue that Oklahoma law authorizes recovery of moving and related expenses regardless of whether the condemning authority takes all or only a portion of a person's property. We agree with landowners.

¶ 19 Long before the enactment of the FURA, moving and related expenses were recoverable in this jurisdiction in a condemnation proceeding as an element of just compensation. In *Blincoe v. Choctaw, Oklahoma & Western R.R.*,[35] a case decided in 1905 that involved the condemnation of property for use by a railroad, the Supreme Court of Oklahoma Territory held that a condemnee is entitled to compensation for "damages to personal property incident and necessarily caused by the exercise of the power of eminent domain in taking land."[36] Explaining its decision, the court reasoned as follows:

"That the owner 'by reason of such railroad' has been put to the expense of removing the stock of lumber then on hand is not disputed; neither can it be denied that the cost of such removal was made necessary by the condemnation of the real estate, and is an injury and damage to the owner to the extent of the cost of such removal. In other words, this ruling [i.e. the trial court's ruling excluding evidence of the cost of moving the lumber] would permit the railroad to take the owner's land and thereby compel him to bear whatever expense may be consequent upon preserving his personal property, and yet be remediless therefor. If this shall he (sic) held to be the law, then the constitutional provision, 'nor shall private property be taken for public use without just compensation,' becomes almost as much a sword as a shield to the private citizen, *for the compulsory addition to the cost of the personal property of the citizen is as much a taking as the absorption of the real estate itself.* Nor is this conclusion relieved or its result modified to the citizen by the fact that the agency thus arbitrarily adding to the cost of his property cannot carry on the business in which he is engaged. The result to the citizen in this case is the same whether the railroad company are benefited by the expenditure or not. In either event the cost of removing the lumber is dead loss to him, occasioned by this taking of his real estate under this power of eminent domain."[37] (emphasis added)

¶ 20 The first state Supreme Court pronouncement on the compensability of moving expenses was made in *Oil Fields & Santa Fe*

quired by Federal, State, or local law which is determined by the head of the Federal agency to have substantially the same purpose and effect as such payment under this section." The applicable federal regulation, 49 C.F.R. Subtitle A, § 24.3, states:
"No person shall receive any payment under this part if that person receives a payment under Federal, State, or local law which is determined by the Agency to have the same purpose and effect as such payment under this part."

**34.** The pertinent provision of 49 C.F.R. Subtitle A, § 24,207 [**General requirements—claims for relocation payments**] states:

"(d) *Time for filing*—(1) All claims for a relocation payment shall be filed with the Agency within 18 months after:
&#42; &#42; &#42; &#42; &#42;
(ii) For owners, the date of displacement or the date of the final payment for the acquisition of the real property, whichever is later."

**35.** 1905 OK 120, 16 Okla. 286, 83 P. 903.

**36.** *Id.* at ¶ 27, 16 Okla. 286, at 907.

**37.** *Id.*

*Railway Co. v. Treese Cotton Co,*[38] in which this court approved an instruction in another railroad condemnation case that the reasonable cost of moving personalty from condemned property and setting it up in another location was compensable in an eminent domain proceeding. The court in that case stated that the law was already "settled" that "when the necessity exists for the removal of property from lands taken in a condemnation proceeding, the reasonable cost of removal is a proper element of damages to be considered, ..."[39]

¶ 21 Recently, in *City of Oklahoma City v. Hamilton,*[40] the Court of Civil Appeals held on the authority of *Blincoe* and *Treese Cotton* that the owner of a moving and storage business taken in eminent domain was entitled under the state Constitution to recover the expense of moving stored personal property, regardless of whether the taking was characterized as a total taking or a partial taking.[41]

¶ 22 Article II, § 24 of the Oklahoma Constitution states:

"Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken...."

This provision is not by its terms limited to real property nor does it exclude from compensable injury damage to personal property when an entire tract of land is taken. "The term 'property' as used in our Constitution regarding the taking of private property for public use for which just compensation must be paid includes not only real estate held in fee, but also easements, personal property and every valuable interest which can be enjoyed and recognized as property."[42] We construe the state takings clause in accord with the principle first recognized by our predecessors in *Blincoe* many years ago: that the compulsory addition to the cost of personal property is as much a taking as the condemnation of real estate. As we said in *Driver v. Oklahoma Turnpike Authority,*[43]

"In this jurisdiction by force of constitutional provision (Art. 2, Sec. 23) the owner of private property taken 'or damaged' for private use is entitled ... to consequential damages resulting from an indirect taking."[44]

¶ 23 The relocation assistance acts do not add to or subtract from the components of value or damage due a condemnee as just compensation under the state law of eminent domain.[45] This court should never be unmindful that a landowner *is entitled to be compensated fully* when the latter's property is taken by the government in the exercise of the eminent domain power. The mandate of both the state and federal constitutions strongly supports full indemnification by just compensation. The command requires that the condemnee be placed as fully as possible in the same position as that occupied before the government's taking.[46]

¶ 24 While a condemnee in Oklahoma is at liberty to seek reimbursement of

---

**38.** 1920 OK 56, 78 Okla. 25, 187 P. 201.

**39.** *Id.* at ¶ 5, at 203 (citing *Blincoe, supra* note 35 and *Arkansas Valley & Western Ry. Co. v. Witt,* 1907 OK 92, 19 Okla. 262, 91 P. 897 (Terr.S.Ct.)).

**40.** 1999 OK CIV APP 62, 984 P.2d 247, *cert. denied. Hamilton* was released for publication by the Court of Civil Appeals and hence has persuasive, but not precedential effect. *See* Rule 1.200, Rules of the Supreme Court, 12 O.S.2001, Ch. 15, App. 1.

**41.** *Id.* at ¶ 16, at 251. *See also State v. U.S. Beef Corp.,* 2002 OK CIV APP 81, ¶ 7, 52 P.3d 1052, 1054 ("The elements of damage in a condemnation case include relocation costs.").

**42.** *Graham v. City of Duncan,* 1960 OK 149, ¶ 18, 354 P.2d 458, 461. *See generally* F.D. Puckett, Annotation, *"Cost to Property Owner of Moving Personal Property as Element of Damages or Compensation in Eminent Domain Proceedings,"* 69 A.L.R.2d 1453 (1960).

**43.** 1959 OK 88, 343 P.2d 1079.

**44.** *Id.* at ¶ 6, at 1080.

**45.** *See e.g. Dept. of Transp. v. Gibson,* 251 Ga. 66, 303 S.E.2d 19, 21 (1983); *Creative Displays, Inc. v. South Carolina Highway Dept.,* 272 S.C. 68, 248 S.E.2d 916 (1978).

**46.** *Okla. Turnpike Auth. v. New Life Pentecostal Church of Jenks,* 1994 OK 9, ¶ 12, 870 P.2d 762, 766.

moving and related expenses in a condemnation proceeding *or* through the ORAA, the question raised in this case is whether receipt of an administrative payment pursuant to the relocation assistance acts precludes a subsequent judicial determination of the same expenses in a condemnation proceeding held under state eminent domain law. As a general rule, the doctrine of preclusion operates to enjoin successive attempts to relitigate the same issue in different forums.[47] A final adjudicative administrative decision may have the same preclusive effect as the judgment of a court provided that the proceeding in which the administrative decision is made meets the standards for preclusive effect applicable to judicial decisions.[48] It is unneces-

**47.** Preclusion doctrine consists of two precepts. Claim preclusion, formerly known at common law as res judicata, teaches that a final judgment on the merits of an action precludes the parties from re-litigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. *State ex rel. Okla. Bar Ass'n v. Giger*, 2004 OK 43, ¶ 12, 93 P.3d 32, 38; *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 7, 979 P.2d 252, 255–56; *Miller v. Miller*, 1998 OK 24, ¶ 23, 956 P.2d 887, 896; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 12, 946 P.2d 662, 667; *Veiser v. Armstrong*, 1984 OK 61, ¶ 8, n. 9, 688 P.2d 796, 800, n. 9. The other preclusion doctrine, formerly known at common law as collateral estoppel, is issue preclusion. Under this doctrine, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. *Giger, supra* at ¶ 13, at 38; *Ouellette v. State Farm Mutual Automobile Ins. Co.*, 1994 OK 79, ¶ 4, n. 8, 918 P.2d 1363, 1365, n. 8; *National Diversified Business Services, Inc. supra* note 25 at ¶ 11, at 666; *Chambers v. City of Ada*, 1995 OK 24, ¶ 9, n. 5, 894 P.2d 1068, 1072, n. 5; *Wilson v. Kane*, 1993 OK 65, ¶ 8, n. 23, 852 P.2d 717, 722, n. 23; *Veiser v. Armstrong, supra* note 25 at ¶ 8, n. 9, at 800, n. 9. See also *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272 (10th Cir. 1995) and Restatement of Judgments (Second) § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). Issue preclusion prevents relitigation of facts and issues actually litigated and necessarily determined in an earlier proceeding between the same parties or their privies.

**48.** *Feightner v. Bank of Okla., N.A.*, 2003 OK 20, ¶ 13, 65 P.3d 624, 629. *See also Senior Accountants, Analysts and Appraisers Ass'n v. City of Detroit*, 399 Mich. 449, 249 N.W.2d 121, 124–25 (1976) ("The doctrines of res judicata and collateral estoppel apply to administrative determinations which are adjudicatory in nature, where a method of appeal is provided, and where it is clear that it was the legislative intention to make the determination final in the absence of an appeal."); *United States v. Utah Constr. and Mining Co.*, 384 U.S. 394, 421, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Int'l Wire v. Local 38, Int'l Brotherhood of Electrical Workers*, 475 F.2d 1078, 1079 (6th Cir.1973); *Texaco, Inc. v. Operative Plasterers and Cement Masons*, 472 F.2d 594, 594–5 (5th Circ.1973); *Paramount Transport Systems v. Chauffeurs, Teamsters & Helpers Local 150*, 436 F.2d 1064, 1065–66 (9th Cir.1971) (concluding that "collateral estoppel effect should be given only to those administrative determinations that have been made in a proceeding fully complying with the standards of procedural and substantive due process that attend a valid judgment by a court and further, that such effect should be accorded only to those findings upon material issues that are supported by substantial evidence on the administrative record as a whole."); *Santos v. State, Dept. of Transp.*, 64 Haw. 648, 646 P.2d 962, 966 (1982); *Bresnahan v. May Dept. Stores Co.*, 726 S.W.2d 327, 329–30 (Mo.1987). An administrative decision that is not appealed administratively or subjected to timely judicial review becomes final. *Long Beach Unified School District v. State*, 225 Cal.App.3d 155, 169, 275 Cal.Rptr. 449 (1991) ("Finality for the purposes of administrative collateral estoppel may be understood as a two step process: (1) the decision must be final with respect to action by the administrative agency [citations omitted]; and (2) the decision must have conclusive effect [citation omitted]. A decision attains the requisite administrative finality when the agency has exhausted its jurisdiction and possesses 'no further power to reconsider or rehear the claim.' "); *Commonwealth, Dept. of Environmental Resources v. Wheeling–Pittsburgh Steel Corp.*, 22 Pa. Cmwlth. 280, 348 A.2d 765, 767 (1975); *Alexander v. Pathfinder, Inc.*, 91 F.3d 59 (8th Cir.1996) (holding under Arkansas law that an unappealed administrative decision achieves the finality necessary for the application of preclusion doctrine); *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St.3d 260, 510 N.E.2d 373, 376 (1987) (holding that res judicata applies to final, unappealed administrative decisions when the administrative proceedings are judicial in nature and where the parties are given the opportunity to litigate the claims); *Equal Employment Opportunity Comm'n v. City of St. Louis*, 1991 WL 138327 (E.D.Mo.1991) (citing Missouri law that applies preclusion to unappealed administrative decisions provided they meet a four-prong test including compliance with due process principles). *[See also* Rest.2d judgments, § 83 for rules governing the preclusive effect of adjudicative determination by administrative tri-

sary to consider whether those standards have been met in this case because the record is devoid of proof that there exists a final adjudicative administrative order determining a claim for benefits sought by landowners. For the doctrine to act as a bar in a subsequent proceeding, there must be a final judgment or order in an earlier proceeding that decides an issue again sought to be raised in the later proceeding.[49] In this case, while the parties agree that the landowners received some money under the relocation assistance acts,[50] how that payment came to be made is unclear. In their answer brief, landowners state that they never submitted a claim under the relocation assistance acts for benefits and that ODOT on its own initiative simply proffered to them the maximum payment they were allowed to receive under the relocation assistance acts. ODOT does not directly dispute this assertion, but instead says merely that "one is left to wonder" how relocation money came to be provided to landowners in the absence of an administrative proceeding from which, presumably, a final order issued. Why ODOT does not simply say landowners filed a claim and it proceeded administratively suggests to us that there may be something to landowners' assertion that they never initiated the administrative process. Still, we are not in the

business of guessing. This court is bound by the record presented on appeal.[51] In an appeal, a document not appearing of record will not be presumed to exist.[52] Rather, we treat the document or instrument as nonexistent.[53] In the final analysis, ODOT introduced no evidence in support of its motion in limine to show that the landowners ever invoked the administrative process so as to preclude them from pursuing their moving and related expenditures in the condemnation proceeding.[54]

¶ 25 In summary, landowners were not required to proceed under the relocation assistance acts for the recovery of their moving and related expenses, such expenses being an element of just compensation in an eminent domain proceeding. Moreover, the record in this case **is devoid of evidence that landowners ever invoked the administrative process for determining relocation benefits under the relocation assistance acts.** Hence landowners had no administrative remedies to exhaust before seeking their remedy in the condemnation proceeding nor were they precluded from seeking those expenses in that proceeding. **Reversal of the judgment is not ODOT's due.**[55]

¶ 26 The COCA's erroneous holding that landowners had to exhaust administrative

---

bunals]. *But see Moore v. Bonner,* 695 F.2d 799, 801 (4th Cir.1982) (holding that res judicata effect applies only to a judicial decision affirming an administrative order and is not applicable to an unappealed administrative decision.).

**49.** *Nealis v. Baird,* 1999 OK 98, ¶ 53, 996 P.2d 438, 459.

**50.** Counsel for ODOT stated in oral argument on the motion in limine that the landowners had already received "a $10,000.00 blanket payment" under the FURA "just to relocate their business" and $3,500.00 for moving and storage expenses. Counsel for the landowners admitted during oral argument that his clients had received "thirteen thousand something." No evidence was introduced during any phase of the proceeding establishing the precise amount.

**51.** *Adams v. Unterkircher,* 1985 OK 96, ¶ 2, n. 2, 714 P.2d 193, 194, n. 2; *McGhee v. McAllister,* 1970 OK 152, ¶ 5, 474 P.2d 940, 940; *Marathon Ins. Co. v. Arnold,* 1967 OK 192, ¶ 10, 433 P.2d 927, 930; *Akers v. Hintergardt,* 1949 OK 44, ¶ 7, 203 P.2d 883, 884.

**52.** *In re McGannon's Estate,* 1915 OK 492, ¶ 1, 150 P. 1109, 1114 [opinion on rehearing]; *Brennen v. Aston,* 2003 OK 91, ¶ 2, 84 P.3d 99, 103 (Kauger, J., concurring in part and dissenting in part).

**53.** *Id.*

**54.** Not raised in this proceeding and hence not addressed is the question of whether the monetary limits imposed by Congress on the amount of relocation compensation available under the FURA would affect the application of preclusion doctrine in a situation where those limits would result in a person receiving less than just compensation as required by the constitution's takings clause.

**55.** A post-remand plea for credit on the judgment is not available to ODOT in this case because the record demonstrates that the witnesses offset the amount landowners received as a relocation assistance payment against the amount of compensation due. *See Handy v. City of Lawton,* 1992 OK 111, ¶ 7, 835 P.2d 870, 877 (Opala, C.J., dissenting in part).

remedies led the intermediate appellate court to remand the cause to determine the amount to which landowners were actually entitled under the FURA's provisions. The COCA then directed the district court to reduce the judgment by the additional amount landowners could have recovered administratively but did not because of their inaction. Landowners did not petition for certiorari. *Hough v. Leonard*[56] teaches that this court will not review any issue decided adversely to a party by the Court of Civil Appeals unless that issue is retendered for review by certiorari.[57] Landowners did not ask this court for any relief from COCA's opinion. Although by today's pronouncement the court vacates that portion of the COCA's opinion that incorrectly holds exhaustion of administrative remedies dispositive, we leave undisturbed the COCA's disposition by remand and mandated reduction. Relief from the latter, which landowners did not seek, cannot be granted.

## V

## THE RECORD DOES NOT SHOW THAT THE JURY AWARDED DUPLICATE COMPENSATION

¶ 27 ODOT argues that the judgment on jury verdict must be viewed as having compensated landowners twice for certain items because landowners were permitted to introduce evidence of both the fair market value of certain improvements on the condemned tract as well as evidence of the cost of making the very same improvements at their new business location. Landowners deny that the judgment includes duplicate compensation.

¶ 28 We have reviewed the transcript of the proceedings and cannot find record support for ODOT's contention. The only specific item identified by ODOT as having been included twice by landowners' witnesses is payment for a septic system. Landowners' first appraiser listed "septic tanks and lateral fields" as one of the improvements taken and gave them a value of $2,200.00. He then testified that the land-

owners were entitled to $20,195.65 for land preparation at the new location of their business. Included in the latter amount was an unspecified sum attributable to septic system construction and/or installation activities: a perk test, excavation for septic tanks, and lumber for culverts. On cross examination, this expert testified that he thought the landowners deserved to be paid both for the septic system taken and for the new one they had to install, but his testimony as to the value of the taken septic system and the cost of land preparation connected to the construction of a new septic system did not clearly reveal that he actually priced the same items twice. Rather, the witness seemed to be saying that the costs included in the land prep figure related to the septic system were not included in the $2,200.00 figure assigned to the septic tanks and lateral fields. We cannot discern from the record whether the $2,200.00 the witness assigned as the value of the condemned septic system included excavation and installation and the testimony in regard to the septic system at the new location appeared to be limited to excavation and installation-related activities.

¶ 29 Landowners' second appraiser priced the replacement cost of a septic system and also included as compensation various items of land preparation, but duplication of compensation for the septic system is no more discernable from her testimony than it is from that of the first appraiser.

¶ 30 ODOT also complains that landowners' experts testified about the cost of installing and connecting utilities at the new business location, suggesting that those costs were also included in the fair market value of the condemned land and building. We disagree. The witnesses testified as to the fair market value of *unimproved* land at the condemnation site and nothing in the record indicates that the cost of reconstructing a similar building included the cost of installing and connecting utilities.

¶ 31 It is not entirely clear whether ODOT is also claiming that the jury's verdict contained duplicate damages because the land-

---

**56.** 1993 OK 112, 867 P.2d 438.

**57.** *Id.* at ¶ 18, at 446; *Kerley v. Uniroyal Goodrich Tire Co.*, 2000 OK 62, ¶ 3, 10 P.3d 230, 231–32

owners were permitted to introduce evidence of elements of damage covered by the relocation assistance acts, but the record does not support that contention either. Both of the landowners' experts testified that they deducted the amount the landowners received as a relocation assistance payment from the amount of compensation the experts determined the landowners were owed.[58]

¶ 32 In short, ODOT has failed to point to record proof of duplicated compensation. The admissibility of the value of property taken in condemnation is within the trial court's discretion. Unless that discretion is abused, the trial court's ruling will not be disturbed. No abuse of discretion is discernible from the record in this case.

## VI

### APPEAL–RELATED COUNSEL FEE

¶ 33 ODOT's petition for certiorari did not seek review of COCA's award of an appeal-related counsel fee. Hence we need not address the counsel-fee issue and that portion of the COCA's opinion which addresses that issue is left undisturbed.[59]

## VII

### SUMMARY

¶ 34 Landowners sought reimbursement of their moving and related expenses as an element of just compensation in a condemnation proceeding. ODOT sought to exclude evidence of such expenses at trial, but was unsuccessful. The judgment on jury verdict must be viewed as including reimbursement of relocation expenses. ODOT's quest to have the judgment reversed for error in the award of relocation expenses is denied. Oklahoma jurisprudence sanctions such recovery under the circumstances of this case. Yet, because landowners did not seek certiorari relief, that portion of the COCA's opinion remanding the cause to the trial court

with directions to reduce the judgment's amount is the settled law of the case and will not be disturbed. We also leave undisturbed the COCA's award of an appeal-related counsel fee.

¶ 35 THE COURT OF CIVIL APPEALS' OPINION IS VACATED IN PART AND LEFT UNDISTURBED IN PART; THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED IN PART AND REVERSED IN PART; THE CAUSE IS REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH THIS PRONOUNCEMENT.

¶ 36 ALL JUSTICES CONCUR.

provements similar to those in the condemnee's old building, holding that the two sources of payment are totally separate.

---

**58.** *Cf. Denver Urban Renewal Authority v. Marshall Manufacturing Co.,* 35 Colo.App. 227, 532 P.2d 746 (1975), in which the court refused to deduct from a condemnation compensation award monies paid under the state relocation assistance act to install in a new building im-

**59.** *See Hough, supra* note 56.